*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re PLAUGHER, Minors.

UNPUBLISHED
June 9, 2022

No. 358604
Calhoun Circuit Court
Family Division
LC No. 2018-002809-NA

Before: BORRELLO, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

After a remote hearing held over three days, the circuit court entered an order terminating the parental rights of respondent-mother to her three children under MCL 712A.19b(3)(c)(*i*) (failure or inability to rectify conditions of adjudication) and MCL 712A.19b(3)(j) (reasonable likelihood of harm).[1] Respondent appeals by right, arguing that the trial court clearly erred by terminating her parental rights, and that the trial court violated her due-process rights by conducting the termination hearing using videoconferencing technology and by taking nine months to appoint appellate counsel after respondent's timely request. Finding no error requiring reversal, we affirm.

## I. RELEVANT FACTS AND PROCEEDINGS

The family came to the attention of petitioner, the Department of Health and Human Services (DHHS), in 2016, when the two oldest children were found unsupervised at a McDonald's restaurant. The children were four years old and two years old at the time. Beginning in June 2018, petitioner provided various services to the family in an effort to prevent removal of the children from the home. However, on October 8, 2018, Children's Protective Services received a request for immediate assistance when respondent was found unresponsive at her home and the children were found screaming in the hallway.

---

[1] By the same order, the trial court also terminated the parental rights of respondent-father. He is not a participant in this appeal. "Respondent" refers solely to respondent-mother.

The next day, petitioner filed a complaint alleging neglect. Petitioner identified several instances in which the children had wandered away from the home unnoticed or been left in the home unsupervised. Petitioner also alleged that the home was strewn with garbage, including food, dirty dishes, and soiled diapers; that the home was infested with cockroaches; and that drug paraphernalia was within reach of the children. The children were removed from the home on October 9, 2018. After a petition was filed, respondent pleaded to the allegations involving neglect, failure to supervise, domestic violence, and failure to provide a safe, clean environment for the children. The trial court ordered the parents to comply with, and benefit from, a case service plan. The initial parent-agency treatment plan called for the parents to undergo psychological evaluations; to engage in individual counseling, substance abuse counseling, random drug screens, and in-home parenting education; and to maintain a clean and safe home.

After a sluggish start, the parents made considerable progress toward reunification. In January 2020, both parents were in such compliance that petitioner recommended reunification services and return of the children one by one within 30 days. Reunification never occurred, and by July 2020, petitioner recommended changing the goal from reunification to adoption on the basis of the parents' lack of consistency regarding drug screens, parenting time, and communication. The children came into care with severe signs of neglect, and needed extensive therapeutic and occupational care. The parents' inability to call in consistently for drug screens, to attend parenting time, and to communicate with the foster parents and petitioner did not signify that the parents had acquired the skills necessary to provide the coordination, communication, and stability necessary to keep their children safe and healthy.

Both the prosecutor and the lawyer-guardian ad litem (LGAL) recommended initiating termination proceedings. Respondent advocated for more time, stating that she had been consistently employed and generally had consistent housing, and that all of her drug screens were negative. Respondent attributed the problems she had to the pandemic and to the fact that petitioner did not give her a phone to make sure she could attend video parenting time. The referee agreed with the LGAL and saw no compelling reason not to order a goal change to adoption. Petitioner filed a supplemental petition to terminate the parents' parental rights.

After hearing testimony and oral arguments, the trial court found that clear and convincing evidence established grounds to terminate respondent's parental rights under MCR 712A.19b(3)(c)(i). The trial court found that the children had been in care for over two years and that conditions remained essentially the same as at the adjudication. The court commented that respondent had "no realization whatsoever of what her children have actually been through," that she "misrepresented situations on a number of occasions," and that she "change[d] her story whenever it [was] convenient for her facts and circumstances." The court also noted that there had been domestic violence in the relationship from the beginning and that it continued, but that respondent was unwilling to address it or to receive treatment for it. As to substance abuse, the court found that respondent missed 50% of her drug screens, and missed screens were deemed positive. The court also found credible the foster parent's testimony regarding parenting time, and it concluded that respondent was only 50% to 60% compliant with parenting time. The trial court commended respondent on the progress she had made, but it observed that this was a case of "too little too late"—after more than two years, respondent was just getting started again. The trial court also found that clear and convincing evidence established grounds for termination under MCR 712A.19b(3)(j), stating that it had no doubt that to place the children back in an environment

-2-

of domestic violence, chaos, substance abuse, and unfit home conditions would negate all the progress the children had made and could have lifelong consequences for them.

Turning to the children's best interests, the trial court acknowledged the children's bond with respondent, but it noted that they were also bonded to the foster mother. The court acknowledged that the children had made substantial progress thanks to the efforts of the foster parents, but it asserted that the children needed to be together in a stable, permanent home, free from domestic violence. The court noted that the foster mother loved the children, that she and the children were bonded, and that the children were together in a preadoptive home. On the basis of the foregoing, the trial court entered an order terminating the parents' parental rights. This appeal by respondent followed.

## II. TERMINATION OF PARENTAL RIGHTS

Respondent first argues that the trial court clearly erred by finding that statutory grounds for termination had been established by clear and convincing evidence and by finding that a preponderance of the evidence established that termination was in her children's best interests. We disagree.

### A. STANDARD OF REVIEW

An appellate court "review[s] for clear error . . . the court's decision that a ground for termination has been proven by clear and convincing evidence . . . ." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). See also MCR 3.977(K). A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). To be clearly erroneous, a decision must be more than maybe or probably wrong. *In re Sours*, 459 Mich 624, 633; 593 NW2d 520 (1999); *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). "Further, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). See also *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); "Appellate courts are obligated to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009). "If the trial court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of the respondent's parental rights." *In re Sanborn*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket Nos. 354915 and 354916); slip op at 9.

Whether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's findings regarding the child's best interests are also reviewed under the clearly erroneous standard. MCR 3.977(K); *In re Rood*, 483 Mich at 90-91.

### B. STATUTORY GROUNDS

Natural parents have a "fundamental liberty interest . . . in the care, custody, and management of their children," and this interest "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v Kramer*,

455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982). However, "[a] parent's right to control the custody and care of her children is not absolute, as the state has a legitimate interest in protecting 'the moral, emotional, mental, and physical welfare of the minor' and in some circumstances 'neglectful parents may be separated from their children.' " *In re Sanders*, 495 Mich 394, 409-410; 852 NW2d 524 (2014), quoting *Stanley v Illinois*, 405 US 645, 652; 92 S Ct 1208; 31 L Ed 2d 551 (1972). "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011).

Evidence is clear and convincing if it

> "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." [*In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020), quoting *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995).]

MCL 712A.19b(3)(c)(*i*) provides grounds for termination when the following conditions are established by clear and convincing evidence:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> \* \* \*

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The first dispositional order in the present case was issued in November 2018, more than two years before respondent's parental rights were terminated in December 2020. It is clear, therefore, that more than 182 days elapsed since issuance of the initial dispositional order. See MCL 712A.19b(3)(c).

The conditions that led to respondent's adjudication were an unclean and unsafe home, substance abuse, lack of parenting skills, and domestic violence. The trial court mentioned the cleanliness of the parents' house in passing, but more significant in the court's view was respondent's record regarding drug screens, her parenting ability, and domestic violence.

The initial parent-agency treatment plan required respondent to undergo random drug screens. According to the testimony of DHHS caseworker Alexis Cole, respondent was only 50%

-4-

compliant with her drug screens throughout the case. That meant that the 50% of the screens that respondent missed were presumed by petitioner to be positive. Another DHHS worker, Sandra Burdick, testified that, because respondent stopped drug screening, Burdick did not consider respondent to have completed the goal of understanding the impact of drug use on parenting.

Respondent contended that she was inconsistent with drugs screens (and parenting time) because of issues with her phone: either she would lose it, father would break it, or service would be cut off. Cole testified that phone problems occasionally appeared in the case notes, but they only recently had become an issue. She also stated that respondent provided inconsistent explanations about what happened to her phones. Cole indicated that respondent had not shown her any phones that were not working, and she could not say whether the phone issues were genuine or excuses for noncompliance. Record evidence indicates that once a parent communicated to the caseworker that they needed a phone, the caseworker provided one for them. To the extent that phone problems prevented respondent from moving toward the goal of reunification with her children, her failure to inform her caseworker when issues with her phone jeopardized that goal arguably called into question respondent's cooperation with the parent-agency treatment plan. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

Regarding parenting skills, the trial court's primary concern was that respondent had not demonstrated sufficient insight into the magnitude of her children's needs and what it would take to meet those needs. Specifically, the court was concerned that respondent did not display any understanding of her children's needs for stability, consistency, and attention. This was a concern throughout the case. Burdick testified that she had been engaged to help the parents improve their understanding of the children's special needs and how to provide for them, among other things. The record is clear that Burdick did not think that respondent had met this goal. In a report to the court written shortly before the termination hearing, Burdick continued to state that respondent "should improve her insights into the needs of the children." Burdick also testified at the termination hearing that respondent would need to make major changes in her life to be able to provide a safe and stable environment for the children, and Burdick did not see those changes happening within a reasonable period.

Other testimony suggested that respondent's contact with the children was not stable or consistent, and did not demonstrate sensitivity to their emotional needs. The foster parent, Crispin Moore, testified that when the oldest child's tonsils were removed, only one person was allowed to accompany him during the procedure. She asked if respondent or father wanted to be that person; they expressed interest, but never gave a firm answer. Four hours *after* the surgery, the parents sent Moore a text saying that they would not be able to attend the surgery. Moore also testified that she invited respondent to call anytime to check on the children and informed respondent of the children's medical appointments so she could attend them. However, respondent rarely, if ever, called to check on the children, and never attended any of their medical appointments while they were in Moore's care, or asked about their outcomes. Moore also testified that the oldest child came back from an overnight stay with the parents dirty, exhausted, and ravenous. According to Moore, respondent frequently chose to have video visits with the children during a break from work or before she had to leave to go somewhere, which necessarily resulted in shortened visits. Moore said that respondent's video visits averaged 20 minutes in length. Cole

testified that respondent visited the children the night before the termination hearing began in December 2020, and the week before that, but her last in-person visit with the two oldest children was on September 18, 2020. From this series of incidents, the trial court "could reasonably infer that respondent's fitness for parenting had not improved." See *In re Miller*, 433 Mich at 341.

At the termination hearing, no questions were asked of respondent regarding the children's particular needs and how respondent planned to meet them. Respondent's testimony stressed her children's bond with her and how well their parenting time and overnight visits went, and specifically sought to discredit Moore's testimony. Respondent testified that she notified Moore the day before one of the children's surgery that she would not be able to attend, that Moore did not actually let her call to check in with the children at unscheduled times, and that respondent's video visits with the children routinely lasted between 30 and 60 minutes. The trial court found Moore's testimony credible and respondent's testimony not credible. This Court typically gives due regard to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. See *In re Miller*, 433 Mich at 337.

As to domestic violence, there is scant record evidence of the nature or frequency of the domestic violence, and no evidence that respondent perpetrated domestic violence or that respondent's behaviors harmed the children or exposed them to harm. This Court has previously found clear error when a trial court based its termination decision on a respondent's involvement in domestic violence, but the record failed to establish that the respondent was a perpetrator. We explained,

> The critical question is *who is the abuser* (or abusers), and without that information, mere references to domestic violence in the abstract cannot be used to support termination. The record clearly shows that respondent was a victim of domestic violence, but it contains nothing beyond hints or suggestions that she may also have been a perpetrator. Hints and suggestions are not enough. [*In re Jackisch/Stamm-Jackisch*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357001); slip op at 5.]

In the present case, there was not even a hint or suggestion that respondent was a perpetrator. In light of *Jackisch/Stamm-Jackisch*, domestic violence was not a proper basis for the present trial court's termination decision on domestic violence.

We conclude nevertheless that the trial court did not clearly err by finding that clear and convincing evidence established grounds for termination under MCL 712A.19b(3)(c)(*i*). It is undisputed that respondent did not fully comply with her treatment plan's drug screening requirements. In addition, although there was evidence in the court reports that respondent successfully completed supportive visitation classes and acted appropriately during in-person parenting time, there was no indication that respondent fully understood the special needs of her children and how to accommodate them, and respondent's own contact with the children, particularly in 2020, was inconsistent and did not evince a sensitivity to the children's emotional needs or need for consistency. Burdick's testimony indicated that it was very unlikely that respondent could make the major changes necessary to provide a safe and stable environment within a reasonable period of time. For these reasons, we affirm the trial court's finding that clear and convincing evidence established the grounds for termination of respondent's parental rights

under MCL 712A.19b(3)(c)(*i*). Because we conclude that the trial court did not clearly err by finding statutory grounds to terminate under MCL 712A.19b(3)(c)(*i*), we need not consider the trial court's findings under MCL 712A.19b(3)(j). *In re Sanborn*, ___ Mich App at ___; slip op at 9.

## C. BEST INTERESTS

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The trial court must find by a preponderance of the evidence that termination of parental rights is in a child's best interests. *In re Moss*, 301 Mich App at 90. In making its best-interest determination, a trial court may consider the "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home[.]" *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015) (quotation marks and citation omitted). The court may also consider "the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption." *In re Sanborn*, ___ Mich App at ___; slip op at 11. In making a best-interest determination, the focus is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

The trial court did not clearly err by concluding that termination of respondent's parental rights was in the best interests of the children. The trial court acknowledged the strong bond between respondent and her children. On appeal, respondent argues that, in light of the presumption that a child's best interests lies with his or her natural parent, respondent's bond with the children should have been dispositive of the best-interest issue. However, the parent-child bond is only one factor that a trial court must consider in determining the best interests of the children, see *In re Gonzales/Martinez*, 310 Mich App at 434, and all the other factors preponderated in favor of termination. Cole testified that the children were bonded with the foster parents and their older son. As already discussed, the trial court did not clearly err by concluding that respondent had not shown evidence of the parenting skills necessary to provide for the children's special needs. According to the psychological evaluations submitted to the court, the children needed a stable and structured environment that provided clear clues about appropriate behavior. Testimonial evidence established that the children were reunited in a preadoptive foster home, where they were receiving the therapies they needed to overcome their individual delays and were scheduled to begin counseling to address their trauma. In light of the foregoing, the trial court's finding that termination was in the best interests of the children was not clearly erroneous.

## III. VIDEOCONFERENCE PROCEEDINGS

Respondent next argues that her right to due process was violated when the trial court conducted the termination hearing using videoconferencing technology in violation of MCR 3.904(B). We disagree.

Because this claim of error comes to us unpreserved, our review is for plain error affecting the respondent's substantial rights. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). In order to establish the right to relief, the respondent must show that there was an obvious error that

affected the outcome of the proceedings. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008).

"The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner." *In re Rood*, 483 Mich at 92 (quotation marks and citations omitted). "Due process requires fundamental fairness, which is determined in a particular situation first by considering any relevant precedents and then by assessing the several interests that are at stake." *Id.* (quotation marks and citations omitted). "In Michigan, procedures to ensure due process to a parent facing removal of his child from the home or termination of his parental rights are set forth by statute, court rule, [DHHS] policies and procedures, and various federal laws . . . ." *Id.* at 93.

MCR 3.904(B) governs the use of videoconferencing technology in child protective proceedings. MCR 3.904(B)(2) allows courts to use such technology under the following conditions:

> (2) As long as the respondent is either present in the courtroom or has waived the right to be present, on motion of either party showing good cause, the court may use videoconferencing technology to take testimony from an expert witness or any person at another location in the following proceedings:

> (a) removal hearings under MCR 3.967 and evidentiary hearings; and

> (b) termination of parental rights proceedings under MCR 3.977 and trials, with the consent of the parties. A party who does not consent to the use of videoconferencing technology to take testimony from a person at trial shall not be required to articulate any reason for not consenting.

On April 7, 2020, the Michigan Supreme Court entered Administrative Order No. 2020-6 "[i]n response to the extraordinary and unprecedented events surrounding the COVID-19 pandemic in Michigan[.]" Supreme Court Administrative Order No. 2020-6, 505 Mich xc (2020). The Supreme Court noted that its "highest priority during this crisis" was for courts "to be vigilant and protect against the further spread of the coronavirus," but also recognized the necessity of ensuring that Michigan's courts "operate[d] as efficiently and effectively as possible under the circumstances . . . ." *Id.* To that end, our Supreme Court

> authorize[d] judicial officers to conduct proceedings remotely . . . using two-way interactive videoconferencing technology or other remote participation tools under the following conditions:

> • any such procedures must be consistent with a party's Constitutional rights;

> • the procedure must enable confidential communication between a party and the party's counsel;

> • access to the proceeding must be provided to the public either during the proceeding or immediately after via access to a video recording of the proceeding,

-8-

unless the proceeding is closed or access would otherwise be limited by statute or rule;

• the procedure must enable the person conducting or administering the procedure to create a recording sufficient to enable a transcript to be produced subsequent to the activity. [*Id*. at xci-xcii.]

While this order was in effect "all judges in Michigan [were] required to make a good faith effort to conduct proceedings remotely whenever possible."[2] *Id*. at xcii.

On June 26, 2020, our Supreme Court ordered the continued use of "remote participation technology (video or telephone) as much as possible to reduce any backlog and to dispose of new cases efficiently and safely." Supreme Court Administrative Order, 2020-19, 506 Mich ___ (2020). Both of these administrative orders were rescinded on July 26, 2021. See July 26, 2021 order of the Michigan Supreme Court in ADM File No. 2020-08, 507 Mich ___. These orders governed the trial court's conduct of the termination hearing in this case.

The trial court's decision to conduct the termination hearing via videoconferencing technology did not affect respondent's substantial rights. See *In re Utrera*, 281 Mich App at 8. The trial court held proceedings in compliance with the earlier-quoted administrative orders issued by our Supreme Court in response to the COVID-19 pandemic. As indicated, in fashioning the administrative order, the Supreme Court sought to balance the public's interest in avoiding the spread of COVID-19 with that of ensuring the efficient and effective resolution of matters before the courts. See *In re Rood*, 483 Mich at 92. Respondent received notice of the hearing and the petition from her caseworker. Petitioner provided respondent with the means of attending the hearing remotely. She attended each day's proceeding, and stated under oath that she had been able to hear all the testimony. The proceeding provided respondents the opportunity for confidential communication with their attorneys, provided for access by the public, and was conducted in a way that allowed a transcript to be produced after the hearing.

Respondent has not shown a violation of MCR 3.904(B) as temporarily amended by the Supreme Court's administrative orders. The use of videoconferencing technology allowed the termination hearing to continue while still minimizing close contact between people in an effort to prevent the spread of COVID-19 during a global pandemic. The circumstances involved balancing the children's health, safety, and need for finality and permanency after having been wards of the court for more than two years, with the health of the respondents, judge, attorneys, court staff, and witnesses. "Due process is flexible and calls for such procedural protections as the particular situation demands." *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993) (quotation marks, citation, and alteration omitted). Under the circumstances here presented, respondent has not demonstrated that the procedure was fundamentally unfair or that she was denied "such procedural

---

[2] This requirement to "make a good faith effort to conduct proceedings remotely whenever possible" belies respondent's argument on appeal that nothing in the administrative orders prevented in-court hearings.

protections as the particular situation demands." *Id*. (quotation marks and citation omitted). Accordingly, respondent is not entitled to any relief on this ground.

In light of the outbreak of the coronavirus, the administrative orders responding to the outbreak by requiring courts to use remote participation technology as much as possible, and the fact that the termination hearing was conducted in accordance with the administrative orders, respondent has failed to show that the trial court plainly erred by conducting the hearing remotely, or that the remote hearing affected her substantial rights.

In light of our disposition of these two issues, we need not reach respondent's claim that the trial court's nine-month delay in appointing appellate counsel after her timely filed request was a violation of her due-process rights. Given that the trial court did not clearly err by terminating respondent's parental rights to her children, or violate her due-process rights by using videoconferencing technology to conduct the termination hearing, the timely appointment of appellate counsel would not have affected the outcome of her appeal.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Christopher M. Murray